# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTGOMERY BLAIR SIBLEY,** | |
| **Plaintiff,** | |
| v. | **Civil Action No.  15-730 (JEB)** |
| **THE HONORABLE MITCH MCCONNELL,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

Calls to amend or rewrite the Constitution have punctuated our nation's history since the document was ratified.  Anticipating as much, attendees of the 1787 Constitutional Convention saw fit to include in Article V provisions for assembling another such convention.  See The Federalist No. 85 (Alexander Hamilton) (explaining that Congress "will be obliged" to call a constitutional convention under the terms of Article V if legislatures of two-thirds of the states request it).  In recent years, political-action committees have advocated constitutional conventions for a variety of reasons, including passing the Balanced Budget Amendment or the Single Subject Amendment, repealing Citizens United v. Federal Election Commission, 558 U.S. 310 (2010), or generally curtailing the powers of the federal government.  See, e.g., Lawrence Lessig, A Real Step to Fix Democracy, The Atlantic (May 30, 2014), available at http://theatln.tc/1yUYLDC ("A convention is . . . . the chance for America to focus on solutions.").  None of these efforts has been successful.

Nor need they be, according to *pro se* Plaintiff Montgomery Blair Sibley.  For, he says, thirty-five states – more than the two-thirds required by Article V – have already voiced their

1

support for a constitutional convention – some as far back as 1901 (Minnesota), some as recently as 1979 (Mississippi).  See Compl., Exh. A ("Authority for Article V Convention Call").  In Plaintiff's view, then, a constitutional convention is long overdue, and Congress has egregiously reneged on its Article V obligations.

Sibley originally brought this lawsuit in District of Columbia Superior Court against congressional leaders Mitch McConnell and John Boehner, seeking to rectify their purported inaction.  After Defendants removed the matter here, Plaintiff sought remand to Superior Court, and Defendants moved to dismiss.  This Court has no opportunity to determine whether Sibley's quest is quixotic; as he concedes he has no Article III standing, remand is the only appropriate outcome.

## I.      Background

Sibley is a United States citizen with a propensity for filing unmeritorious lawsuits, often against members of state and federal government.  See, e.g., Sibley v. Macaluso, No. 13-7128, 2014 WL 211219, at *1 (D.C. Cir. Jan. 9, 2014) ("Appellant [Sibley]'s challenge to this court's summary affirmance procedure is unavailing. . . . The district court correctly determined that the appellees [ – Court of Appeals judges and a clerk for the D.C. Court of Appeals – ] are entitled to absolute immunity from appellant's claims for monetary damages.") (citations omitted); Sibley v. Obama, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir. 2012) (summarily affirming denial of quo warranto writ against President Obama "because the writ is only available for someone who would obtain the office if the incumbent were ousted"); Sibley v. Alito, No. 08-1797, 2009 WL 1649491, at *1 (D.D.C. June 11, 2009) (denying motion to appeal in forma pauperis and noting that "Mr. Sibley is a frequent filer[; t]he issue he sought leave of this Court to appeal . . . is not only well settled, but it has been decided against Mr. Sibley in a nearly identical case he

filed previously in this jurisdiction"); see also In re Discipline of Sibley, 559 U.S. 1002 (2010)

("Montgomery Blair Sibley, of Washington, District of Columbia, is suspended from the practice

of law in this Court and a rule will issue . . . requiring him to show cause why he should not be

disbarred from the practice of law in this Court."); In re Disbarment of Sibley, 560 U.S. 902

(2010) ("Disbarment order entered.").

Defendant John A. Boehner currently serves as the Speaker of the U.S. House of

Representatives, and Defendant Mitch McConnell presently holds the position of Majority

Leader of the U.S. Senate; Sibley has sued both Defendants in their official capacities.  See

Compl., ¶¶ 4-5.

Acting pro se, Sibley filed this action seeking a court order requiring Congress to call a

constitutional convention as provided by Article V.  He asks that this Court declare that he

possesses the "general right" to ensure that "Government be administered according to law";

declare that two-thirds of the States have assented to a constitutional convention but that

Congress has failed to call for one; and issue a writ of mandamus under 28 U.S.C. § 1651(a) to

compel Defendants to "carry out their duty by 'calling' a Convention."  Id., ¶¶ 6-11.

Sibley filed this suit in Superior Court, but McConnell removed it here pursuant to 28

U.S.C. §§ 1441(a), 1442(a), and 1446(b).  See Notice of Removal (May 13, 2015).  These

provisions permit removal of suits filed in state court against "any officer of either House of

Congress, for or relating to any act in the discharge of his official duty."  28 U.S.C. § 1442(a)(4).

After the case was transferred to this Court but before either Defendant had answered or

otherwise responded to the Complaint, Plaintiff moved to remand the action back to Superior

Court.  See First Remand Mot. at 1.  McConnell then filed a Motion to Dismiss, and Boehner did

the same shortly thereafter, largely incorporating the arguments in McConnell's Motion.  See

ECF Nos. 8, 11.  Sibley responded by filing a Second Motion to Remand, a Motion for Rule 11

Sanctions, and, later, a Motion for Leave to Amend the Complaint.  See ECF Nos. 13, 14, 30.

All of these myriad motions have been briefed and are now ripe for decision.

## II.    Legal Standard

In evaluating Defendants' Motions to Dismiss, the Court must "treat the complaint's

factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be

derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C.

Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal

citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C.

Cir. 2005). This standard governs the Court's consideration of Defendants' Motions under Rules

12(b)(1) and 12(b)(6), both of which apply here.  See Scheuer v. Rhodes, 416 U.S. 232, 236

(1974) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over

the subject matter or for failure to state a cause of action, the allegations of the complaint should

be construed favorably to the pleader."); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984)

(same).  The Court need not accept as true, however, "a legal conclusion couched as a factual

allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v.

Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S.

265, 286 (1986) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving

that the Court has subject-matter jurisdiction to hear his claims.  See Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24

(D.C. Cir. 2000).  A court also has an "affirmative obligation to ensure that it is acting within the

scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185

F. Supp. 2d 9, 13 (D.D.C. 2001).  "For this reason, 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005).

## III.   Analysis

In their respective Motions, Defendants offer the Court three reasons to dismiss the Complaint.  They first contend that Plaintiff lacks standing, both because he fails to identify a proper injury-in-fact and because whatever injury he does identify cannot be redressed by this Court.  See McConnell MTD at 2; Boehner MTD at 2. They further argue that the Speech or Debate Clause of the Constitution, Art. I, sec. 6, cl. 1, blocks Plaintiff's claims "because they arise out of an alleged failure to take legislative action."  McConnell MTD at 2; Boehner MTD at 2.  Finally, they assert that the political-question doctrine bars the Court from considering the merits of the suit.  See McConnell MTD at 3; Boehner MTD at 3.  Persuaded by the first of these arguments – that Plaintiff lacks Article III standing – the Court finds no reason to address Defendants' remaining contentions.  After discussing the standing question, the Court will address the issues of remand versus dismissal and whether sanctions are warranted.

### A.   Standing

Article III of the United States Constitution limits the jurisdiction of the federal courts to resolving "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  A party's standing "is an

essential and unchanging part of the case-or-controversy requirement of Article III." <u>Lujan</u>, 504 U.S. at 560. To establish standing, a party must, at a constitutional minimum, meet the following criteria. First, the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" <u>Id.</u> (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" <u>Id.</u> (alterations in original) (citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Id.</u> at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." <u>U.S. Ecology</u>, 231 F.3d at 24. Here, Defendants maintain that Plaintiff cannot establish either the first or the third elements.

It is the unusual case in which a plaintiff <u>concedes</u> that the Court lacks subject-matter jurisdiction to adjudicate his claims. And yet, even before Defendants filed their Motions to Dismiss, Sibley offered just such a concession. <u>See</u> First Remand Mot. at 4 ("This Court lacks subject-matter jurisdiction as Sibley does <u>not</u> have 'standing' in an Article III court to pursue his claims."); <u>id.</u> at 5 ("Sibley has <u>not</u> suffered an injury-in-fact which is concrete and particularized . . . . Sibley's claim to 'injury in fact' is <u>no</u> different than any other United States Citizen thus it is <u>not</u> 'concrete and particularized.'"). The Court concurs.

Sibley's Complaint seeks only to redress the violation of a "general right[] 'to require that the Government be administered according to law.'" Compl., ¶ 6; <u>see also</u> First Remand Mot. at 5 ("[A]ll Sibley pleads in the Complaint regarding his injury is found at ¶ 6."). He "maintains that under the implied covenant in the social compact which is the United States Constitution,"

he must "possess such general right[,] for to hold otherwise would be absurd."  Compl., ¶ 6.  Of

course, such a "general right," if it existed, would be held equally by all U.S. citizens, as Sibley

aptly notes.  Its alleged violation is therefore the archetypal "generally available grievance about

government – claiming only harm to his and every citizen's interest in proper application of the

Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it

does the public at large – [which] does not state an Article III case or controversy."  Lujan, 504

U.S. at 573-74.  The agreement of the parties that Sibley has not articulated a concrete,

particularized injury-in-fact and can thus not satisfy the first – indeed, the most foundational – of

Article III's standing requirements renders the jurisdictional inquiry here a simple one.

        In addition, there is no doubt that he lacks standing to demand that a court require the

leaders of the House and Senate to call for a constitutional convention.  The pellucid dictates of

the Supreme Court underscore time and again that citizens who seek simply to enforce the

country's laws or Constitution without alleging any injury specific to themselves do not have

standing to do so in a federal court.  See, e.g., Schlesinger v. Reservists Comm. to Stop the War,

418 U.S. 208, 226-27 (1974) ("In some fashion, every provision of the Constitution was meant to

serve the interests of all.  Such a generalized interest, however, is too abstract to constitute a

'case or controversy' appropriate for judicial resolution.  The proposition that all constitutional

provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries

of those provisions has no boundaries.") (footnote omitted); Ex parte Levitt, 302 U.S. 633, 634

(1937) (per curiam) ("It is an established principle that to entitle a private individual to invoke

the judicial power to determine the validity of executive or legislative action he must show that

he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that

action and it is not sufficient that he has merely a general interest common to all members of the public.").

One final note:  Although he asserts he lacks standing and actively seeks a remand to Superior Court, Sibley has perplexingly also filed a Motion for Leave to Amend the Complaint. Likely, this is in response to Defendants' argument that, even if Sibley's unsatisfied desire for a constitutional convention <u>did</u> constitute an injury-in-fact, it could not be redressed by this Court in an action against the two named Defendants.  This is because the Speaker of the House of Representatives and the Majority Leader of the Senate cannot, by themselves, call a constitutional convention.  <u>See</u> McConnell MTD at 7.  In Plaintiff's Motion to Amend, he requests certification of a class of defendants comprising all members of Congress.  <u>See</u> Mot. to Amend Compl. at 1.  Such a move, he contends, would solve the redressability problem that Defendants' Motions to Dismiss had identified.  Because such proposed amendment would have no effect on the inadequacy of the <u>injury</u> identified in the Complaint, however, the Court will deny his Motion to Amend as futile.  <u>See</u> <u>McGee v. District of Columbia</u>, 646 F. Supp. 2d 115, 119 (D.D.C. 2009) ("Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss.") (citing <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).

B.  <u>Remand</u>

While Sibley's concession resolves the matter of standing rather easily, the Court must next determine what consequences flow from this jurisdictional deficit.  Defendants urge the Court to dismiss the suit entirely, asserting that Sibley's lack of standing does not require a remand.  <u>See</u> Boehner Opp. to Remand and Sanctions at 8.  Plaintiff disagrees, contending that 28 U.S.C. § 1447(c) <u>requires</u> remand when a federal court determines that it lacks subject-matter

jurisdiction over a removed matter.  See Second Remand Mot. at 1.  Finding Plaintiff's reading of the removal statute to be correct, the Court will follow that course.

The text of the removal statute is unequivocal: it instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c) (emphasis added); see also Republic of Venezuela v. Philip Morris, 287 F.3d 192, 196 (D.C. Cir. 2002) ("When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case.") (citing 28 U.S.C. § 1447(c)).

The circuits are split as to whether § 1447(c) is subject to a "futility" exception, which would permit dismissal without remand where remand would be futile because the state court, too, would dismiss the case.  See Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 213-14 (3d Cir. 1997) (collecting cases and describing split between Fifth and Ninth Circuits, which do recognize a futility exception to § 1447(c), and Fourth and Seventh Circuits, which do not). The D.C. Circuit has yet to enter the fray, but faced with a situation much like the one presented by this case – in which a defendant "argue[d] that remand would be a 'futile waste of judicial resources,' because the standing rules applicable to federal courts apply equally to the Superior Court for the District of Columbia" – another court in this district declined to recognize a futility exception.  See Randolph v. ING Life Ins. & Annuity Co., 486 F. Supp. 2d 1, 10-11 (D.D.C. 2007).  The Randolph court explained that "the 'futility exception' recognized by the Fifth and Ninth Circuits has been expressly rejected by the Third, Fourth, Seventh, and Tenth Circuits; the First and Second Circuits have not adopted a futility exception when given the opportunity to do so; and the Supreme Court, in dicta, has expressed a reluctance to recognize a futility exception." Id. at 11.

The dicta referenced by <u>Randolph</u> is found in <u>International Primate Protection League v.</u> <u>Administrators of Tulane Educational Fund</u>, 500 U.S. 72 (1991).  There, the Supreme Court examined whether to remand pursuant to § 1447(c) when "a remand of petitioners' claims to Louisiana court would be futile."  <u>Id.</u> at 87.  The Supreme Court examined a First Circuit case, <u>Maine Association of Interdependent Neighborhoods v. Commissioner of Maine Department of</u> <u>Human Services</u>, 876 F.2d 1051 (1st Cir. 1989), which found that "none of the[] anticipated barriers to suit in state court was sufficiently certain to render a remand futile."  <u>Int'l Primate</u>, 500 U.S. at 88.  Approving of this outcome, the Supreme Court reasoned that a "plaintiff's lack of Article III standing would not necessarily defeat its standing in state court" because the standing issue "turns on a question of [state] law, and we decline to speculate on the proper result."  <u>Id.</u> at 88-89.  The Court "also [took] note . . . of the literal words of § 1447(c), which, on their face, give no discretion to dismiss rather than remand an action."  <u>Id.</u> at 89 (internal quotation marks and citation omitted).

Although D.C. law seems relatively clear that its courts "follow[] Supreme Court developments in constitutional standing jurisprudence with respect to whether the plaintiff has made out a case or controversy," <u>Grayson v. AT&T Corp.</u>, 15 A.3d 219, 233 (D.C. 2011) (*en banc*), remand still seems appropriate under the weight of the case law and the text of the removal statute.  Put another way, in the absence of D.C. Circuit or Supreme Court law supporting a futility exception to remand, the Court believes it must grant Plaintiff's Motion to Remand this suit.

Protesting the necessity of remand, Boehner and McConnell attempt to marshal cases supporting their position that the Court may simply dismiss this case altogether.  Unfortunately, the cases in Defendants' arsenal are not sufficiently analogous to this one to supply the

appropriate rule.  For instance, <u>Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.</u>, 549 U.S. 422 (2007), examined a choice between dismissal for lack of jurisdiction and dismissal on the ground of international *forum non conveniens*, not remand to state court.  And <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574 (1999), determined that a federal court may dismiss a removed suit for want of personal jurisdiction before first determining whether it enjoyed subject-matter jurisdiction over the case.  The holding in <u>Ruhrgas</u>, however, was limited to those cases in which the personal-jurisdiction inquiry is straightforward but the question of subject-matter jurisdiction and possible remand presents more complex issues.  The Court included the caveat that, "in most instances subject-matter jurisdiction will involve no arduous inquiry . . . [, and i]n such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first" and remand the removed case to state court if it finds such jurisdiction lacking.  <u>Id.</u> at 587-88.  Whatever exception to remand <u>Ruhrgas</u> carves out, it is inapplicable here, where the Court's lack of subject-matter jurisdiction is clear as day.  Indeed, <u>Ruhrgas</u> did not suggest that a district court possesses discretion to avoid a § 1447(c) remand simply by finding a non-subject-matter jurisdictional bar to the suit.  In any event, Defendants advance no basis for dismissal that does not implicate the Court's subject-matter jurisdiction, unlike the defendants in <u>Ruhrgas</u>.

Defendants also argue that remand under § 1447(c) is not appropriate where the case has been removed under § 1442, which applies specifically to federal-official defendants.  In their view, applying § 1447(c)'s mandate that the case "shall be remanded" when a district court lacks subject-matter jurisdiction here "would thwart 1442(a)(1)'s purpose of providing a federal officer a federal forum to hear any defense."  McConnell Remand Opp. at 7.  But Defendants offer no authority for this proposition, which they admit contradicts the plain language of

11

§ 1447(c).  Instead, they offer cases in which courts stress the importance of the right of removal

in § 1442(a), but do not determine that this right of federal officials trumps the district court's

obligation to remand in the absence of subject-matter jurisdiction – often because § 1447 is not

even at issue.  See, e.g., Willingham v. Morgan, 395 U.S. 402 (1969); Bennet v. MIS Corp., 607

F.3d 1076 (6th Cir. 2010).  In fact, the cases they cite reaffirm the notion that remand is required,

even for cases involving federal-official defendants, as soon as the federal district court

determines that it lacks subject-matter jurisdiction.  See Jamison v. Wiley, 14 F.3d 222, 238-39

(4th Cir. 1994) ("When a case has been properly removed under § 1442(a), the district court may

remand it back to state court only if it thereafter discovers a defect in removal procedure or a

lack of subject matter jurisdiction in the federal court.  28 U.S.C. § 1447(c). Neither basis for

remand exists here.").  Defendants identify no case holding that, merely because a case was

properly removed by federal officials pursuant to § 1442(a), the clear mandate of § 1447(c) no

longer applies.

     The Court, consequently, will remand the matter to Superior Court, though it is

sympathetic to Defendants' concern that doing so will "unnecessarily prolong this case."

Boehner Reply at 15.  Yet, given the law set forth in Grayson, Sibley's cause may not remain

alive in Superior Court for long.

     C.  Sanctions

     The final motion implicated here is Sibley's for Rule 11 sanctions.  Federal Rule of Civil

Procedure 11 prohibits attorneys from filing pleadings, motions, or other papers "for any

improper purpose, such as to harass or to cause unnecessary delay or needless increase in the

cost of litigation," and it empowers courts to impose "an appropriate sanction."  Fed. R. Civ. P.

11(b)(1), (c)(2)-(3).  Plaintiff believes that McConnell's removal of this suit to federal court

notwithstanding Sibley's lack of Article III standing caused unnecessary delay and constituted unwarranted harassment, thereby violating this rule.  In essence, Sibley suggests that a federal-official defendant who removes an action pursuant to § 1442 and subsequently contests the federal court's subject-matter jurisdiction is *per se* in violation of Rule 11 – but he identifies no authority stating that this is so.  Nor does he identify any other evidence that McConnell or Boehner in any way sought to harass him or delay this litigation; on the contrary, all of Defendants' papers evince a strong motivation to resolve this suit as quickly as possible.

More importantly, Sibley appears to misunderstand the central purpose of Rule 11, which "is to require greater attention by the district courts to pleading and motion abuses . . . [to] discourage abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."  Westmoreland v. CBS, Inc., 770 F.2d 1168, 1173-74 (D.C. Cir. 1985) (quoting Advisory Committee Notes to Fed. R. Civ. P. 11) (quotation marks and alterations omitted).  Nothing in Defendants' filings appears remotely to be frivolous.  Sibley's attempt to aggravate federal officials via yet another "citizen suit," on the other hand, hews far closer to the conduct Rule 11 interdicts.  And this Court is hardly the first to take umbrage at Sibley's filings.  See, e.g., In re Sibley, 564 F.3d 1335, 1337 (D.C. Cir. 2009) (suspending Sibley from practicing before the Court of Appeals for D.C. for three years as a result of "his failure to pay child support and filing [of] frivolous claims and appeals"); Sibley v. Sibley, 885 So. 2d 980, 988 (Fla. Dist. Ct. App. 2004) (noting Sibley's two dozen failed appeals in state court, labeling him "an unending source of vexatious and meritless litigation," and suspending him from the Florida bar for three years).  In light of this history, the Court finds Sibley's Motion for Rule 11 Sanctions more than a little audacious, and it will be denied.

**IV.      Conclusion**

For the reasons stated herein, the Court will grant in part Defendants' Motions to

Dismiss; deny Plaintiff's Motion for Leave to Amend the Complaint; deny Plaintiff's Motion for

Rule 11 Sanctions; and grant Plaintiff's Second Motion for Remand.  A contemporaneous Order

to that effect will issue this day, which Order will also remand the matter to Superior Court.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 13, 2015